T.C. Summary Opinion 2019-7

UNITED STATES TAX COURT

VICA TECHNOLOGIES, LLC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15247-17S L.                    Filed April 4, 2019.

Hyacinth Anyiam (an officer), for petitioner.

<u>Arthur W. Petersen III</u> and <u>Audra M. Dineen</u>, for respondent.

SUMMARY OPINION

URDA, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]All section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In this collection due process (CDP) case, Vica Technologies, LLC, seeks review pursuant to sections 6320(c) and 6330(d)(1) of the determination by the Internal Revenue Service (IRS) Office of Appeals to uphold the filing of a notice of Federal tax lien to collect a tax liability for 2015. Petitioner also challenged in the petition a purported determination not to abate interest for 2011, 2012, 2014, and 2015, as well as certain collection actions relating to 2011, 2012, and 2014. We previously dismissed those claims for lack of jurisdiction.

Respondent has moved for summary judgment under Rule 121, contending that no disputed issues of material fact remain and that the determination to sustain the collection action for 2015 was proper as a matter of law. We agree and accordingly will grant the motion.

## Background

Petitioner is a Pennsylvania limited liability company operated by Hyacinth Anyiam, who acted on its behalf at all times relevant to this case. Petitioner filed its 2015 Form 1065, U.S. Return of Partnership Income, on October 17, 2016, a month after it was due. The IRS thereafter imposed a late-filing penalty pursuant to section 6698(a) of $780, which it assessed on November 7, 2016.

To collect the liability, the IRS began by issuing petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing under I.R.C. 6320 on December 15, 2016. This notice informed petitioner that it had until January 23, 2017, to request a hearing to appeal the collection action.

Petitioner did not seek a CDP hearing at first. Instead, over the course of a week, it sent a flurry of requests for other types of relief. Specifically, petitioner submitted to an IRS revenue officer a letter requesting abatement of the section 6698(a) penalty for 2015, as well as the abatement of similar late-filing penalties that the IRS had previously assessed for 2011, 2012, and 2014.[2] Petitioner followed this penalty abatement request with a letter asserting that it had reasonable cause for the late filing of its returns. Petitioner also filed a Form 12277, Application for Withdrawal of Filed Form 668(Y), Notice of Federal Tax Lien, in which it sought withdrawal of the lien notices for 2011, 2012, 2014, and 2015.

On December 20, 2016, the revenue officer sent petitioner an IRS Letter 2413(P), which denied the penalty abatement request on the ground that the information petitioner provided did not establish "reasonable cause for adjusting

---

[2]The IRS had issued collection notices to petitioner to collect the liabilities for 2011, 2012, and 2014 in October and November of 2016.

the penalty". The letter included a section entitled "Appeals Procedures", which set forth steps to "receive further consideration by an Appeals Officer." In particular, petitioner was required to submit to the revenue officer a written statement of the disputed issues within 15 days of the date of the letter. According to the letter, "[e]ven though you may be requesting Appeals consideration, we will first review your additional information to determine whether the penalty should be removed or reduced." The letter continued: "If your appeal cannot be immediately resolved with the additional information, we will forward your written statement to Appeals." Petitioner did not file a statement with the revenue officer, or take any other action in response to the letter, before the expiration of the 15-day period on January 4, 2017.

This did not mean petitioner was giving up the fight. To the contrary, petitioner's camp sent a trio of documents later in January: (i) a Form 12153, Request for a Collection Due Process or Equivalent Hearing, in which petitioner requested a CDP hearing; (ii) a letter from Mr. Anyiam in support of petitioner's CDP request; and (iii) a document styled "Appeal for Abatement of Late Filing Penalties", which Mr. Anyiam sent to the revenue officer on petitioner's behalf.[3]

---

[3]The record does not offer a precise date of mailing for these documents. Each was dated January 12, 2017, and was received by the IRS on January 20,

(continued...)

On the Form 12153, petitioner indicated that it wished to challenge the late-filing penalties for 2011, 2012, 2014, and 2015. Petitioner checked the box marked "I cannot pay balance", as well as the box to request withdrawal of a lien.

In his accompanying letter of support, Mr. Anyiam requested penalty abatement because of a downturn in petitioner's business. He also noted that he was "currently taking classes in tax preparation." He further explained that he had "sacked * * * [petitioner's] current accountant because of his negligence and poor attention because I was not paying him his full service charges."

Mr. Anyiam sang a similar tune in the penalty abatement appeal letter to the revenue officer, mixing allegations of financial problems, recriminations against petitioner's accountant, and assurances that Mr. Anyiam himself was learning to prepare taxes. The appeal letter, which addressed petitioner's 2011 through 2015 tax years, further attempted to justify abatement of the penalties on the ground that

---

[3](...continued)
2017. As we have noted in a similar context, although litigants cannot stipulate jurisdiction, they may agree on the facts that determine jurisdiction. Whistleblower 23711-15W v. Commissioner, T.C. Memo. 2018-34, at *9. The parties' agreement that the IRS received petitioner's CDP request on January 20 suffices to establish that the request was timely for present purposes. See sec. 6320(a)(3)(B), (b)(1); sec. 301.6320-1(a)(2), Q&A-A11, Proced. & Admin. Regs.

Mr. Anyiam had been out of the country extensively for family and work reasons from 2011 through 2013.[4]

On April 17, 2017, a settlement officer in the Office of Appeals sent petitioner a letter in response to its CDP hearing request. This letter explained that petitioner's hearing request was late for several of the tax periods and that for those periods petitioner would receive an equivalent hearing rather than a CDP hearing. Noting that petitioner had requested penalty abatement, the settlement officer asked for any documentation that might support a finding of reasonable cause. She scheduled a telephone hearing for May 23, 2017, but explained that petitioner could reschedule or request "another type of conference (telephone, correspondence or in-person)."

In response Mr. Anyiam, acting again on petitioner's behalf, contacted the settlement officer once by letter and twice by phone to discuss the merits of the case. At the start of the second telephone call the settlement officer informed Mr.

---

[4]To close the loop on the challenges petitioner filed in December, the IRS denied the request for lien withdrawal by means of a letter dated February 9, 2017. On March 20, 2017, petitioner filed an appeal of that decision in the IRS Collection Appeals Program, an administrative program that provides an opportunity for a taxpayer to contest the determination of certain collection actions in the Office of Appeals, without right to a later judicial review. See generally Internal Revenue Manual pt. 8.24.1.2 (Dec. 2, 2014). That appeal lies outside the scope of our review, and thus we say no more about it.

Anyiam that that discussion would serve as petitioner's hearing, given that he was addressing the substance of petitioner's CDP challenge (as he had in the previous letter and call).

According to the settlement officer's case notes, she then gave Mr. Anyiam "an opportunity to fully explain * * * [petitioner's] position." He acknowledged that petitioner had failed to timely file the relevant Forms 1065 but nonetheless asked for abatement of the penalties on the ground that "he forgot to remind * * * [petitioner's accountant] to file an extension and the actual returns." After hearing this explanation, the settlement officer informed him that petitioner could not request penalty abatement because it had failed to timely appeal the abatement denial. The settlement officer's notes represent that Mr. Anyiam initially suggested that petitioner had not timely received the letter denying penalty abatement but later admitted "that he was stretching the truth" on this point.

Mr. Anyiam next urged withdrawal of the lien against petitioner. The settlement officer rejected that request, however, on the ground that petitioner did not fit within any of the categories set forth in the Code under which such relief could be granted.

Throughout the hearing Mr. Anyiam also asserted that petitioner's financial problems justified penalty abatement or made payment impossible. According to

her case notes, the settlement officer offered him a streamlined installment agreement of $125 per month to resolve petitioner's liability.[5] The settlement officer also explained that petitioner could send a copy of Form 433-B, Collection Information Statement for Businesses, to help her determine whether petitioner met certain hardship criteria. The case notes reflect that Mr. Anyiam declined to consider these collection proposals until he had the opportunity to discuss the matter with the revenue officer. The settlement officer gave Mr. Anyiam until May 17, 2017, to restart talks, but he did not do so.

The settlement officer thereafter closed the case and on June 14, 2017, issued a notice of determination sustaining the filing of the Federal tax lien as to 2015. As particularly relevant here, the notice stated that petitioner was precluded from raising the issue of penalty abatement during the CDP hearing because it had "had a prior opportunity to appeal [the] denial" of its abatement request. Despite this position the notice nonetheless explicitly addressed, and rejected, petitioner's arguments that its reliance on its accountant and Mr. Anyiam's absences from the country constituted reasonable cause.

---

[5]Although it is not entirely clear from the record, it appears that the proposed installment agreement was intended to resolve both the 2015 penalty and petitioner's liabilities for 2011, 2012, and 2014.

Petitioner timely petitioned this Court for review of the notice of determination. Although the notice related solely to 2015, the petition challenged the propriety of the IRS' collection actions regarding 2011, 2012, and 2014, as well as a purported determination not to abate interest for 2011, 2012, 2014, and 2015. We dismissed those claims for lack of jurisdiction. See secs. 6320(c), 6330(d); see also sec. 301.6320-1(i)(2), Q&A-I6, Proced. & Admin. Regs. The sole issue remaining before us is the determination by the Office of Appeals to uphold the notice of lien filing for 2015.

## Discussion

### A.    Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Id. However, the nonmoving party may not rest upon the mere allegations or denials of its pleadings but instead must

set forth specific facts showing that there is a genuine dispute for trial.

Rule 121(d); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

B.      Standard of Review

Pursuant to sections 6320(c) and 6330(d)(1), we have jurisdiction to review an Office of Appeals determination. See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Where the validity of the underlying tax liability is properly at issue, we review the determination regarding the underlying tax liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). We review all other determinations for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182. In reviewing for abuse of discretion, we must uphold the Office of Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1116 (2009).

C.      Underlying Liability

A taxpayer may raise a CDP challenge to the existence or amount of his underlying tax liability only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute

such tax liability." Sec. 6330(c)(2)(B). The phrase "underlying tax liability" includes the tax deficiency, any penalties and additions to tax, and statutory interest. Katz v. Commissioner, 115 T.C. 329, 339 (2000).

In determining whether the taxpayer had an opportunity to dispute his liability, we note that the regulations distinguish between liabilities that are subject to deficiency procedures and those that are not. Penalties imposed under section 6698(a) are not subject to deficiency procedures. See sec. 6698(d). With respect to such liabilities the regulations provide that "[a]n opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability." Sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

Respondent argues that petitioner cannot challenge its underlying liability for 2015 because it had an opportunity to do so but failed to take advantage of it. In particular, respondent contends that the Letter 2413(P), dated December 20, 2016, gave petitioner until January 4, 2017, to appeal the denial of the abatement request and that petitioner's failure to timely appeal precludes a challenge now.

The IRS' argument that petitioner cannot challenge its underlying liability in this CDP proceeding hinges on the premise that the Letter 2413(P) provided petitioner with an adequate opportunity to do so. This form letter indicates that it

was last revised in 1991, and thus the procedures it contemplates were developed before the CDP regime was even a twinkle in Congress' eye. This Court has not previously addressed whether the pre-CDP procedures described in the letter satisfy the requirements of the CDP regime.

We need not decide that question in this case, however, because the notice supplies a separate basis for resolving the issue of petitioner's liability for the penalty. The settlement officer gave Mr. Anyiam the opportunity at the CDP hearing to raise arguments about petitioner's underlying liability, and he did so. According to the case notes, Mr. Anyiam reprised petitioner's contention that its accountant's failure to timely file its 2015 return constituted reasonable cause that would justify abatement of the late-filing penalty. Mr. Anyiam also suggested that petitioner's financial travails constituted reasonable cause. And Mr. Anyiam argued throughout the proceeding that his extended absences from the country supplied reasonable cause for petitioner's late filing. The notice of determination flatly rejected these contentions.

Taking the facts in the light most favorable to the nonmoving party, we agree with that conclusion.[6] Petitioner's argument that reliance on an accountant

---

[6]It should be noted that petitioner did not challenge the applicability or amount of the underlying penalty at the CDP hearing. Rather, it challenged only

(continued...)

constitutes reasonable cause flies in the face of well-established precedent that the failure to file a timely return is not excused by reliance on an agent and that such reliance does not supply reasonable cause for late filing. See United States v. Boyle, 469 U.S. 241, 252 (1985). Nor do financial problems, standing alone, establish reasonable cause for late filing. See Bowden v. Commissioner, T.C. Memo. 1996-318, 72 T.C.M. (CCH) 96, 109 (1996) (taxpayer's alleged inability to pay tax was not reasonable cause for late filing). And Mr. Anyiam's absences from the country in 2013 do not provide reasonable cause for petitioner's failure to timely file its 2015 Form 1065. Accordingly, we will grant summary judgment to respondent, upholding the IRS' determination of the underlying liability.

D.     Abuse of Discretion

We next must review the record to determine whether the settlement officer: (1) properly verified that the requirements of applicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and

---

[6](...continued)
whether reasonable cause existed that would justify abatement of the penalty pursuant to sec. 6698(a). Given that the existence of reasonable cause was the only issue petitioner raised at the CDP hearing, it is the only issue we review. See Giamelli v. Commissioner, 129 T.C. 107, 113 (2007); see also sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs. ("In seeking Tax Court review of a Notice of Determination, the taxpayer can only ask the court to consider an issue, including a challenge to the underlying tax liability, that was properly raised in the taxpayer's CDP hearing.").

(3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3). Our review of the record establishes that the settlement officer satisfied all of these requirements.

As an initial matter, this Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. See Hoyle v. Commissioner, 131 T.C. 197, 200-203 (2008), supplemented by 136 T.C. 463 (2011). Petitioner did not allege in the petition that the settlement officer failed to satisfy this requirement, and we conclude, from our review of the record, that the settlement officer conducted a thorough review of the transcripts of petitioner's account and verified that all requirements were met.[7]

_____

[7]In his motion for summary judgment, respondent asserts that the penalty imposed under sec. 6698 constitutes a penalty "automatically calculated through electronic means" within the meaning of sec. 6751(b)(2)(B) and is therefore not subject to the supervisory approval requirement of sec. 6751(b)(1). Petitioner does not argue to the contrary, and thus we need go no further. We nonetheless note our recent holding that a sec. 6699 penalty--the same type of penalty as is imposed under sec. 6698 here, just for S corporations--was automatically calculated through electronic means where the penalty was a simple and automatic computation and had been generated by the IRS computer system. See ATL & Sons Holdings, Inc. v. Commissioner, 152 T.C. __, __ (slip op. at 21-25) (Mar. 13, 2019); cf. Walquist v. Commissioner, 152 T.C. __, __ (slip op. at 20) (Feb. 25, 2019) (concluding that a substantial understatement penalty under sec. 6662 that
(continued...)

The record also shows that the settlement officer did not abuse her discretion when considering the issues petitioner raised at the CDP hearing. There, Mr. Anyiam argued that petitioner was entitled to withdrawal of the lien notice for 2015 and that the revenue officer had suggested at an earlier point in the process that such relief might be forthcoming. Section 6323(j)(1) lists four circumstances under which the Secretary has the discretion to grant such relief: (A) the filing of the notice was premature or not in accordance with administrative procedure; (B) the taxpayer has entered into an installment agreement; (C) the withdrawal of the notice would facilitate the collection of the tax liability; or (D) with the consent of the taxpayer or the National Taxpayer Advocate, the withdrawal of the notice would be in the best interests of the taxpayer and the United States. Petitioner has offered no reason to think that it fits within any of these categories. We accordingly hold that the settlement officer did not abuse her discretion in so concluding.

The record further reflects that, in sustaining the proposed collection action, the settlement officer properly balanced "the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be

---

[7](...continued)
was "determined by an IRS computer program without human input or review" was a penalty automatically calculated through electronic means).

no more intrusive than necessary." Sec. 6330(c)(3). A taxpayer in a CDP hearing has the right to request a collection alternative, such as an installment agreement. See sec. 6330(c)(2)(A)(iii). Petitioner did not do so. To the contrary, the record indicates that the settlement officer attempted to craft an acceptable installment agreement, which Mr. Anyiam (on petitioner's behalf) refused to accept. The record further shows that the settlement officer gave petitioner additional time to reconsider and restart discussions on this front or to introduce documentation supporting a finding of financial hardship. Petitioner did not avail itself of any of these chances. Although petitioner asserts in this Court that it did not decline any installment agreement, it fails to support its contention with any facts. Nor has it suggested that it put forward any offer itself. We thus find ourselves in the broad heartland of our precedent that an Appeals officer does not abuse her discretion in sustaining a proposed collection action where the taxpayer has failed to put a specific offer on the table. See, e.g., Dinino v. Commissioner, T.C. Memo. 2009-284, 98 T.C.M. (CCH) 559, 564 (2009).

Petitioner finally contends that the settlement officer abused her discretion by not affording it a hearing. Although it is not entirely clear, petitioner apparently faults the settlement officer for not conducting a face-to-face hearing. The regulations, however, provide that a "CDP hearing may, but is not required to,

consist of a face-to-face meeting". Sec. 301.6320-1(d)(2), Q&A-D6, Proced. & Admin. Regs.; see, e.g., Katz v. Commissioner, 115 T.C. at 337. If a face-to-face hearing is not held, a hearing conducted by telephone, by correspondence, or by review of documents suffices for purposes of section 6320(b). See sec. 301.6320-1(d)(2), Q&A-D7, Proced. & Admin. Regs.; see, e.g., Talbot v. Commissioner, T.C. Memo. 2016-191, at *17, aff'd, 708 F. App'x 421 (9th Cir. 2017). The settlement officer here offered a face-to-face hearing, which petitioner did not accept, before holding a telephone CDP hearing. Petitioner presents no colorable claim that the settlement officer abused her discretion.

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and affirm the IRS' determination to sustain the notice of Federal tax lien filing for 2015.

To reflect the foregoing,

An appropriate decision will be entered.