T.C. Memo. 2016-237

UNITED STATES TAX COURT

KENNETH PITNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30026-14L.                          Filed December 29, 2016.

<u>Terri Ann Merriam</u>, for petitioner.

<u>Connor J. Moran</u>, for respondent.

MEMORANDUM OPINION

KERRIGAN, <u>Judge</u>:  The petition in this case was filed in response to a

Notice of Determination Concerning Collection Action(s) Under Section 6320

and/or 6330 (notice of determination) dated November 12, 2014.  The notice of

determination sustained a notice of Federal tax lien (NFTL) filed regarding

petitioner's unpaid income tax liabilities for tax years 1988, 1989, 1990, and 1991.

**[\*2]** The issue for consideration is whether the settlement officer abused her discretion in rejecting petitioner's proposed installment agreement in the notice of determination.[1]

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

## Background

This case was submitted fully stipulated under Rule 122. The stipulated facts are incorporated in our findings by this reference. Petitioner resided in California when he timely filed his petition.

On May 6, 2014, respondent filed an NFTL against petitioner. At the time of the filing of the NFTL petitioner's assessed income tax liabilities for tax years 1988, 1989, 1990, and 1991 were $27,224, $46,034, $45,911, and $67,709, respectively. Also on May 6, 2014, respondent issued to petitioner a Notice of

---

[1]Two other issues were addressed in the notice of determination and in the parties' briefs. The first was whether the filing of the NFTL was proper. Petitioner concedes that it was. The second was whether credits of $7,861 and $4,495 should be returned to petitioner's account for tax year 1998 and applied to petitioner's liabilities. Respondent in the notice of determination did agree to return these credits to petitioner's account.

[*3] Federal Tax Lien Filing and Your Right to a Hearing with regard to petitioner's income tax liabilities.

On May 29, 2014, petitioner filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP request). In the CDP request petitioner requested an installment agreement as a collection alternative. In a letter attached to the CDP request petitioner also stated that pending changes in his financial circumstances required reconsideration of the NFTL filing.

On September 24, 2014, the settlement officer assigned to petitioner's case sent petitioner a letter scheduling a telephone CDP hearing for October 28, 2014. The letter also requested that petitioner provide a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

On October 7, 2014, petitioner provided the settlement officer with a completed Form 433-A and a letter of explanation accompanied by other supporting documents. On the Form 433-A petitioner stated the following as monthly income and expenses:

| Income | Amount |
|---|---|
| Wages, pension, and Social Security | $11,572 |

| [*4]  Expense | Amount |
| --- | --- |
| Food, clothing, and misc. | $1,092 |
| Housing and utilities | 2,906 |
| Vehicle ownership | 565 |
| Vehicle operating | 1,012 |
| Health insurance | 573 |
| Out-of-pocket healthcare | 288 |
| Life insurance | 150 |
| Delinquent State or local taxes | 1,968 |
| Other | 705 |
| Total expense | 9,259 |

The Form 433-A showed petitioner's net discretionary income as $2,313.

Petitioner stated in the letter of explanation that his wife "plans to retire sometime next year" and that therefore he believed his total income "should be calculated at the current rate for one year ($11,572) and then reduced to $6,081 for 2015." The $6,081 number equals petitioner's total income shown on the Form 433-A minus the wage income shown on that form, $5,491, which was attributable to petitioner's wife's employment. Petitioner's wife retired on December 31, 2015.

**[*5]**    Regarding expenses reported on the Form 433-A, petitioner's letter of explanation stated that for housing and utilities expenses, "the national guidelines for two people are $2,906[2] per month" and petitioner and petitioner's wife "have used the higher amount * * * due to necessary repairs."  The letter stated in connection with healthcare costs that petitioner was in poor health and that additional expenses would arise in the future as petitioner's medical conditions progressed.  Petitioner requested on the Form 433-A allowable expenses of $573 per month for health insurance as well as $288 per month for unreimbursed medical expenses.  The letter explained:  "The IRS national guidelines amount for two people (at the taxpayer's age) for unreimbursed [medical] expenses is $144 each.  We have claimed the out of pocket standard of $288 per month [for petitioner and petitioner's wife]."  In supporting documents attached to the Form 433-A petitioner substantiated unreimbursed medical expenses of $253 per month for the latest 12-month period for him and his wife.

---

[2]The Internal Revenue Service (IRS) guidelines for 2014 provided a local standard of $2,533 per month for housing and utilities expenses for a family of two in Solano County, California, petitioner's county of residence.  Allowable Living Expense Housing and Utilities Standards - effective 03/31/2014, https://web.archive.org/web/20141023021308/http://www.irs.gov/pub/irs-utl/all_states_housing_standards.pdf (last visited Oct. 17, 2016).  From the context of petitioner's letter we can see that the $2,906 referenced in this sentence was an error.  The $2,906 was, in fact, the "higher amount" reported by petitioner on the Form 433-A expense chart.

**[*6]**    At the conclusion of the letter of explanation petitioner proposed an installment agreement "for one year where * * * [petitioner's wife] pays over the agreed upon net discretionary income amount."  After one year "a new financial statement would be provided, reflecting * * * [petitioner's wife's] retirement, and a final collection alternative agreed upon."

On October 28, 2014, the settlement officer held a telephone CDP hearing with petitioner's counsel.  During the hearing petitioner's counsel reiterated that petitioner's health was not good and that petitioner's wife might retire soon but confirmed that petitioner's wife was still working.  Petitioner's counsel stated that petitioner had proposed an installment agreement of $1,500 per month for one year.  After one year petitioner would provide an updated Form 433-A to respondent reflecting the expected financial changes, including that petitioner's wife might retire.

On November 12, 2014, respondent issued the notice of determination in which respondent determined that petitioner's proposed installment agreement was not acceptable.  Under the heading "Issue(s) raised by the taxpayer" respondent summarized the pending financial changes raised by petitioner's counsel during the telephone hearing but concluded that "the present financial information provided by the taxpayer and his spouse" showed petitioner had a "present ability"

**[*7]** to make installment payments above those offered in his proposal.  Because petitioner's "own figures" showed petitioner's net discretionary income to be $2,313 per month, the notice of determination stated that petitioner's proposal to pay $1,500 per month did not meet "acceptance criteria, as per Internal Revenue Manual (IRM) 5.14.1.4."

Discussion

Section 6320(a)(1) requires the Secretary to provide written notice to a taxpayer when the Secretary has filed an NFTL against the taxpayer's property and property rights.  See secs. 6321, 6323.  The Secretary must also notify the taxpayer of his right to a CDP hearing before the Internal Revenue Service Appeals Office.  Sec. 6320(a)(3).  If the taxpayer requests a CDP hearing, he may raise at the hearing any relevant issues relating to the unpaid tax or the NFTL filing, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives.  Secs. 6320(c), 6330(c)(2)(A).  The taxpayer can raise challenges to the underlying tax liability giving rise to the lien only if he did not receive a statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.  Sec. 6330(c)(2)(B).  Following the CDP hearing the Appeals Office shall make a determination taking into account all issues properly raised by the taxpayer

**[\*8]** and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3).

Where the validity of the underlying tax liability is properly at issue, this Court reviews the liability determination de novo.  Sego v. Commissioner, 114 T.C. 604, 610 (2000).  The Court reviews administrative determinations made by the Appeals Office regarding nonliability issues for abuse of discretion.  Goza v. Commissioner, 114 T.C. 176, 182 (2000).  Petitioner does not challenge the underlying liabilities, and therefore the standard of review is abuse of discretion.

In determining whether there has been an abuse of discretion, we consider whether the determination by the Appeals Office was arbitrary, capricious, or without sound basis in fact or law.  See, e.g., Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).  The Court does not conduct an independent review and substitute its judgment for that of the settlement officer.  Murphy v. Commissioner, 125 T.C. at 320.  If the settlement officer follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not reweigh the equities.  Link v. Commissioner, T.C. Memo. 2013-53, at *12.

**[\*9]**  Petitioner does not dispute that the settlement officer acted properly in sustaining the NFTL filing.  The settlement officer's determination shows she properly determined to sustain the NFTL filing on the basis of the factors specified by section 6330(c)(3).  Petitioner contends that it was an abuse of discretion for the settlement officer not to accept his proposed collection alternative of an installment agreement to pay $1,500 per month.

Section 6159(a) authorizes the Commissioner to enter into installment agreements with taxpayers to satisfy their liabilities if the Commissioner determines that such agreements will facilitate the collection of the liabilities. The Internal Revenue Manual (IRM) and sections 301.6159-1, 301.6320-1, and 301.6330-1, Proced. & Admin. Regs., establish the IRS procedures for determining whether an installment agreement will effectively facilitate the collection of a liability.  The Commissioner may subsequently alter, modify, or terminate an installment agreement if the Commissioner determines that the financial conditions of the taxpayer have significantly changed since the time the agreement was reached.  Sec. 6159(b)(3).

The IRM states generally that installment agreements "should reflect taxpayers' ability to pay".  IRM pt. 5.14.1.4 (Sept. 19, 2014).  To that end a settlement officer is instructed to analyze a taxpayer's income and allowable

**[\*10]** expenses to determine the amount of disposable income the taxpayer has available to apply to the tax liability. Id. The settlement officer may also analyze other assets of the taxpayer that may be available to offset the balance due. Id.

Generally, we have held it is not an abuse of discretion for purposes of section 6320 or 6330 when an Appeals Office employee relies on guidelines published in the IRM to evaluate a proposed installment agreement. See, e.g., Etkin v. Commissioner, T.C. Memo. 2005-245; Schulman v. Commissioner, T.C. Memo. 2002-129. Thus a settlement officer may, without abusing her discretion, employ the local and national standards provided by the IRM in calculating a taxpayer's total allowable expenses. See Aldridge v. Commissioner, T.C. Memo. 2009-276. A settlement officer may deviate from local and national standards when the taxpayer demonstrates with reasonable substantiation that he would not have adequate means to provide for his basic living expenses. See Marascalco v. Commissioner, T.C. Memo. 2010-130, aff'd, 420 F. App'x 423 (5th Cir. 2011).

Petitioner contends that the settlement officer did not follow IRM guidelines in that she failed to consider certain factors such as petitioner's advanced age and health problems. See IRM pt. 5.14.1.4(5). Specifically, petitioner contends the settlement officer's rejection of his proposed installment agreement was an abuse of discretion because the settlement officer failed to consider petitioner's needed

[*11] home repairs, his age and health, and the probability of his spouse's retirement. We conclude that the record establishes that the settlement officer adequately considered these issues in the process of making her determination.

The local standard for housing and utilities expenses for a family of two in petitioner's county of residence during 2014 was $2,533 per month. In calculating petitioner's allowable monthly expenses, the settlement officer used a higher figure that petitioner had provided of $2,906 per month for housing and utilities. The settlement officer accepted, without argument, petitioner's deviation from the local standard on the basis of petitioner's representation that the extra money was needed to make repairs to his home. The settlement officer accepted the higher monthly expense amount even though it had been implied previously that petitioner's wife planned to use cash from a separate savings account to help pay for those same repairs.

Petitioner's account transcript shows that the settlement officer made a note following the CDP hearing regarding petitioner's poor health. Petitioner proposed as part of his allowable expenses on his Form 433-A $288 per month for unreimbursed healthcare expenses. The settlement officer accepted that amount for calculating petitioner's monthly expenses and ability to pay.

[*12] We conclude that it was not arbitrary, capricious, or without sound basis in fact for the settlement officer to accept and employ the expense figures that petitioner himself had provided in evaluating the proposed installment agreement. Even in consideration of petitioner's wife's pending retirement, we do not find the settlement officer abused her discretion by refusing to accept an installment payment amount significantly below the amount petitioner was capable of paying.

Respondent's notice of determination did acknowledge the concern petitioner raised about pending financial changes but concluded that the proposed amount of $1,500 was unacceptable on the basis of petitioner's "present financial information".  (Emphasis added.)  The settlement officer did not act arbitrarily by basing her determination on present circumstances rather than uncertain future circumstances.  Section 6159(b)(3) provides for the cancellation of an existing installment agreement in the case that a taxpayer's financial conditions significantly change.  In the original letter of explanation attached to his Form 433-A, petitioner proposed an installment agreement based on "the agreed upon net discretionary income amount" for one year, after which "a new financial statement would be provided * * * and a final collection alternative agreed upon." Petitioner contemplated an installment agreement based on his ability to pay,

[*13] which could potentially be later restructured at such time as his ability to pay changed.

In calculating petitioner's ability to pay, the settlement officer used all expense numbers provided by petitioner on the Form 433-A and found that the excess of petitioner's monthly income over his expenses was $2,313. Petitioner's proposed monthly installment amount of $1,500 was therefore $813 less than his demonstrated ability to pay, the amount which the IRM guidelines suggest is the minimum a settlement officer should accept in arriving at an installment agreement with a taxpayer. See Lites v. Commissioner, T.C. Memo. 2005-206. The settlement officer did not abuse her discretion by rejecting petitioner's proposed installment agreement.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered

for respondent.